IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BOBBY ASKEW, PORTER BUTLER,      )
and JOSEPH MCDUFFIE, on behalf of )
themselves and others similarly situated, )
                                 )
Plaintiffs,                      )
                                 )
v.                               )   CIVIL ACTION FILE
                                 )   NO. _____
THE SOUTHERN PAN EMPLOYEE        )
STOCK OWNERSHIP PLAN;            )
AMERICAN STRUCTURAL             )
CONCRETE, LLC f/k/a SOUTHERN     )
PAN STRUCTURES LLC,             )
as successor-in-interest to SOUTHERN )
PAN SERVICES COMPANY, in its     )
capacity as SPONSOR or FIDUCIARY )
of the Southern Pan Employee Stock )
Ownership Plan; KEN DICKEY and   )
JEREMY CANTRILL, in their        )
respective capacities as PLAN     )
ADMINISTRATORS or FIDUCIARIES )
of the Southern Pan Company Employee )
Stock Ownership Plan             )
                                 )
Defendants.                      )

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs BOBBY ASKEW, PORTER BUTLER, and

JOSEPH MCDUFFIE ("Plaintiffs"), on behalf of themselves and others similarly

situated, and hereby file their Complaint against Defendants SOUTHERN PAN

SERVICES COMPANY EMPLOYEE STOCK OWNERSHIP PLAN (the "Plan");

AMERICAN STRUCTURAL CONCRETE, LLC f/k/a SOUTHERN PAN

STRUCTURES LLC, as successor-in-interest to Southern Pan Services Company,

in its capacity as Plan Sponsor or Fiduciary; and KEN DICKEY ("Dickey") and

JEREMY CANTRILL ("Cantrill") in their respective capacities as PLAN

ADMINISTRATORS or FIDUCIARIES (collectively, the "Plan Administrators");

and HLB GROSS COLLINS, P.C. ("Gross Collins"), respectfully showing to the

Court as follows:

## I.        PARTIES, JURISDICTION, AND VENUE

### 1.

At all material times, Southern Pan sponsored and maintained an employee

pension Plan (the "Plan") within the purview of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Upon information and

belief, American Structural Concrete, LLC and Southern Pan Structures LLC are

successors-in-interest to the original Plan fiduciary, Southern Pan, that was

charged with and controls administration of the Plan.  Upon information and belief,

Southern Pan, American Structural Concrete, LLC and Southern Pan Structures

LLC also were administrators of the Plan.  At all relevant times, Southern Pan,

American Structural Concrete, LLC and Southern Pan Structures LLC were

fiduciaries of the Plan under ERISA.

2.

At all relevant times, Defendants Dickey and Cantrill were administrators, trustees, and fiduciaries of the Plan under ERISA.

3.

At all relevant times, Defendant Gross Collins, an accounting firm organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, provided services to the Plan and Plan fiduciaries.  Upon information and belief, Gross Collins, at all relevant times, also was a fiduciary of the Plan under ERISA § 3(21) with discretionary authority over the allocation, investment, and disbursement of Plan assets.

4.

Plaintiffs, residents of Georgia, are former employees of Southern Pan with a colorable claim to benefits under the Plan and, therefore, are participants in the Plan as defined by ERISA.

5.

This Court has jurisdiction over the ERISA claims pursuant to 29 U.S.C. §§ 1132, 1133, 1144 and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims against Gross Collins pursuant to 28 U.S.C. § 1367.

Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the breach took place here, and Defendants may be found in this District.

## II.      THE PLAN

6.

The Plan, an "eligible individual account Plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and qualified under the Internal Revenue Code, consists of a separate account for each participant, to which contributions and investment performance are allocated.  The Plan also is a "defined contribution Plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), as the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's accounts.  A copy of the Plan, including amendments, from 2006, is attached hereto as Exhibit A.

7.

The Plan provides, in relevant part, that the vested benefits of a participant who resigns or is dismissed by Southern Pan "will be distributable to the Participant in the time and manner provided in Section 11.4."  (Exh. A at Section

10.2.)  Section 11.4 further provides that a participant whose account value is at least $1,000 is entitled to a distribution "no later than the 180th day following the close of the Plan Year which is the fifth Plan Year following the Plan Year in which the Participant's Settlement Date [termination date] occurs (or as soon as administratively feasible following the completion of the annual valuation, if later)."  (Section 11.4(ii)(C).)  In addition, Section 11.4 provides that "the Participant's vested Accounts distribution may be accelerated and the following alternative modes of distribution may be selected by the Administrator (after considering the available liquid assets of the Company and the Trust) pursuant to a nondiscriminatory policy:  (1) Distribution of a Participant's vested Accounts in a single lump sum; or (2) Distribution of a Participant's vested Accounts in substantially equal, annual installments over a period not exceeding five years . . . or (3) Any combination of the foregoing."  (Section 11.4(a)(ii)(C)(1)-(3).)

8.

Section 11.5 also provides a participant with the option of rolling over his distribution under the Plan to an "Eligible Retirement Plan."  (Section 11.5.)

9.

The Plan provides that "[c]laims for benefits under the Plan may be filed with the Plan administrator on forms supplied by the Plan administrator in

accordance with subsection (b)(1) or (b)(2) herein, as applicable." (Section

17.9(b).)  Generally, the "Plan administrator shall furnish to the claimant written

notice of the disposition of a claim within 90 days after the application therefor is

filed; provided, if special circumstances require an extension of time for processing

the claim, the Plan administrator shall furnish written notice of the extension to the

claimant prior to the end of the initial 90-day period, and such extension shall not

exceed one additional, consecutive 90-day period." (Section 17.9(b)(1).)

10.

The Summary Plan Description ("SPD") explains more of the details of the

Plan.  A true and correct copy of the SPD reflecting the Plan as of January 1, 2014

is attached hereto as Exhibit B.

11.

The SPD further provides that "[c]laims for benefits under the Plan may be

filed with the Plan Administrator on forms supplied by the Plan Administrator"

while "[g]enerally, the Plan Administrator will furnish the person who is claiming

benefits (typically, you or your beneficiary) (the 'claimant') with written notice of

the disposition of a claim within 90 days after the claims application is filed.

However, if special circumstances require an extension of time to process the

claim, the Plan Administrator will furnish written notice of the extension to the

- 6 -

claimant prior to the end of the initial 90-day period, and such extension shall not exceed one additional, consecutive 90-day period." (Exh. B, at p. 13.)

### III.    PLAINTIFFS' VESTED BENEFITS

12.

At all relevant times during their employment with Southern Pan, Plaintiffs were eligible to and, in fact, did participate in the Plan.

13.

Plaintiff Askew's employment with Southern Pan terminated on February 20, 2010 after 18 years of employment.  As of the time of his termination, Askew had a vested balance in his ESOP account consisting of 133.8155 shares of Southern Pan stock.

14.

Plaintiff Butler's employment with Southern Pan terminated on February 20, 2010 after 31 years of employment.  As of the time of his termination, Butler had a vested balance in his ESOP account consisting of 165.3462 shares of Southern Pan stock.

15.

Plaintiff McDuffie's employment with Southern Pan terminated in 2007 after 27 years of employment.  As of the time of his termination, McDuffie had a

vested balance in his ESOP account consisting of 142.7659 shares of Southern Pan stock.

16.

In September 2010, Plaintiffs each elected to receive a lump sum payout of their respective Plan benefits, which, according to the Plan, could be distributed on approximately June 30th following either the year each Plaintiff turned 65 or following five (5) calendar years after each Plaintiff's termination date.

17.

Plaintiffs did not receive their lump sum payout following either the year they turned 65 or following five (5) calendar years after their respective termination dates.

### IV.   DEFENDANTS' ADDITIONAL MALFEASANCE

18.

Although company revenue dipped in 2010 through 2012, by 2013, Southern Pan had more than $60 million in assets.  The Plan, at all times, was financially secure.

19.

Accounting firm Gross Collins, upon information and belief, performed annual audits for the Plan through 2013.

20.

In September 2013, Southern Pan notified employees that, "due to several unforeseen circumstances," it conducted a review of some of the accounting methodologies.  This review served as the basis for the 2012 financial statements and the December 31, 2012 valuation of the stock in the ESOP.  At that time, and as a matter of public record, the Company determined from its financial information that there was an oversight of payroll liabilities.  This oversight resulted in revisions to the Company's financial statements for the 2012 and 2013 years.  The company, however, remained a going concern.

21.

On August 29, 2016, SPS filed the Form 5500 for the Plan for the 2015 Plan Year with the Department of Labor.  Nothing in the Form 5500 supported, let alone discussed, that the company or Plan was insolvent or that the Company was going to terminate the Plan.

22.

Two days later, SPS advised its employees that the company was insolvent and not a viable concern and that all shares in the Plan were worthless.  A copy of Southern Pan's September 1, 2016 letter is Exhibit C.

23.

Upon information and belief, Southern Pan dissolved itself right after issuing the September 1, 2016 letter.  However, it did not terminate the Plan before doing so.  The company re-formed as Southern Pan Structures LLC with the same principals, same physical address, same core business, same clients, and same employees.  Southern Pan Structures, LLC changed its name to American Structural Concrete, LLC in 2017.

## V.    PLAINTIFFS' WRITTEN REQUESTS FOR PLAN DOCUMENTS

24.

On November 17, 2016, counsel for Plaintiffs notified Cantrill and Dickey of Plaintiffs' interest in the Plan and provided written notice of their request and claim for benefits under the Plan.   Plaintiffs also requested several documents associated with the Plan and Southern Pan.  A true and correct copy of counsel's November 17, 2016 correspondence is attached hereto as Exhibit D.

25.

On December 1, 2016, Duke Groover, attorney for Southern Pan Structures LLC, responded to counsel's November 17, 2016 letter to Cantrill and Dickey, informed him that Southern Pan had dissolved, and referred counsel  to Southern Pan 's legal counsel, John Bellus.  A true and correct copy of the December 1,

2016 correspondence is attached hereto as Exhibit E.

26.

On January 13, 2017, counsel for Plaintiffs sent Mr. Bellus a letter informing him of Plaintiffs' interest in the Plan and provided written notice of their request and claim for benefits under the Plan.  Plaintiffs also requested several documents associated with the Plan and Southern Pan.  A true and correct copy of counsel's January 13, 2017 correspondence is attached hereto as Exhibit F.

27.

On April 5, 2017, following no response, counsel for Plaintiffs sent Mr. Bellus a follow-up email.  A true and correct copy of counsel's April 5, 2017 email is attached hereto as Exhibit G.

28.

On April 10, 2017, Mr. Bellus responded and attached several, but not all, of the requested documents.  Mr. Bellus further stated in his response that Southern Pan dissolved after it "became insolvent and could not complete its projects due to multiple issues, including but not limited to:  tight pricing resulting from the recession, payroll tax liens, lack of credit for bonding capacity, inability to stay current on its line of credit, etc."  Mr. Bellus represented that Southern Pan Structures LLC "tried to survive the effects of the recession and other issues, but

was ultimately unsuccessful." A true and correct copy of Mr. Bellus' April 10, 2017 email is attached hereto as Exhibit H.

29.

The April 10, 2017 email from Mr. Bellus did not acknowledge Plaintiffs' claims for their benefits under the Plan.

30.

On July 6, 2017, counsel for Plaintiffs sent Mr. Bellus a formal request for benefits under the Plan for each Plaintiff. True and correct copies of the July 6, 2017 correspondence for each Plaintiff is attached hereto as Exhibits I-K, respectively.

31.

Neither Mr. Bellus nor any of Defendants responded to counsel's July 6, 2017 formal request for benefits on behalf of Plaintiffs.

32.

Because of Defendants' violations of the Plan's claims procedures and Plaintiffs' rights to a full and fair review under 29 U.S.C. § 1133(2), Plaintiffs' claims are deemed exhausted and, thus, Plaintiffs are entitled to have this Court determine their claims. Additionally, Defendants are barred from challenging Plaintiffs' claims on any basis due to violation of claims procedures and ERISA.

33.

All conditions precedent to bringing this action are satisfied, waived, or deemed exhausted.

## VI.   PLAINTIFFS' CLAIMS

**A.    Count I –  For Benefits:  29 U.S.C. § 1132(a)(1)(B)**

34.

29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "(B) to recover benefits due to him under the terms of his Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan."

35.

Plaintiffs are participants in the Plan and became entitled to benefits under the Plan either the year they turned 65 or following five (5) calendar years after their respective termination dates.

36.

Plaintiffs sought but were wrongfully denied Plan benefits by Defendants.

37.

Plaintiffs are entitled to distribution of their ESOP accounts in a lump sum rollover distribution in an amount equal to the product of their Company shares

multiplied by the per share price using Southern Pan Services Company's valuation at the date of their respective terminations.

38.

Defendants are further liable to Plaintiffs for prejudgment interest on the distribution amounts owed and attorney fees and costs under 29 U.S.C. § 1132(g).

**B.      Count II –  Penalties Under 29 U.S.C. § 1132(c)**

39.

ERISA specifies that a participant may request in writing copies of the Plan, the summary Plan description, and any other documents under which the Plan is administered, such as the annual reports, trust agreements, and amendments.  29 U.S.C. §§ 1024(b)(4).

40.

A Plan Administrator has thirty (30) days to comply with a participant's request for Plan documents made under 29 U.S.C. §§ 1024(b)(4).  *See* 1132(c)(1)(B).  Failure to provide the requested documents timely entitles a participant to a $110.00 per day penalty under 29 U.S.C. § 1132(c)(3).

41.

By written correspondence dated November 17, 2016, Plaintiffs, through their undersigned counsel, sent a request for Plan documents to Cantrill and Dickey

as Plan Administrator(s).

42.

To date, none of Defendants has produced all of the documents under which the Plan is administered pursuant to 29 U.S.C. § 1024(b)(4).

43.

By failing to provide all requested Plan documents, Defendants have violated their duties under ERISA.

44.

Plaintiffs are entitled to statutory penalties against Defendants in the amount of $110.00 for each day since December 17, 2016 that the Plan documents were not produced.

C.      Count III –  Breach Of Fiduciary Duty Under 29 U.S.C. §§ 1132(A)(2) AND (A)(3)

45.

29 U.S.C. § 1132(a)(3) authorizes appropriate equitable relief against Plan fiduciaries.

46.

29 U.S.C. § 1132(a)(2) authorizes Plaintiffs to bring a civil action on behalf of the Plan for relief under ERISA, 29 U.S.C. § 1109.

47.

29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that "any person who is a fiduciary with respect to a Plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such Plan any losses to the Plan resulting from each such breach, and to restore to such Plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

48.

29 U.S.C. §§ 1104(a)(1)(A) and (B) provides, in pertinent part, that a fiduciary "shall discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." These fiduciary duties are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."

49.

Under 29 U.S.C. § 1109(a), any fiduciary who breaches any of the responsibilities, obligations, or duties imposed by 29 U.S.C. §§ 1104(a)(1)(A) and (B) shall be personally liable to make good to a Plan any losses to that Plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

50.

Pursuant to 29 U.S.C. § 1104(a)(1), Defendants were required to discharge their duties with respect to the Plan and Plan participants solely in the interests of the participants with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and of like aims.

51.

Southern Pan Services Company, as the Plan sponsor, had the fiduciary duty to appoint a Plan administrator that was without a conflict of interest, to monitor the chosen Plan administrator, and to remove, if necessary, the chosen Plan administrator.

52.

Southern Pan Services Company, American Structural Concrete, LLC f/k/a Southern Pan Structures LLC, Dickey, and Cantrill, as Plan administrators, had the fiduciary duty to administer the Plan in the best interests of participants, to provide Plan participants and beneficiaries the documents required to be automatically furnished under ERISA, to prudently manage Plan assets, to follow the terms of the Plan, to not interfere with participants' attainment of vested benefits under the Plan, to not misrepresent the terms of the Plan, and to not engage in self-dealing and other actions prohibited by ERISA.

53.

Defendants breached these fiduciary duties in one or more of the following ways:

(a)     By failing to furnish Plaintiffs and similarly situated Plan participants a copy of the summary Plan description ("SPD") and/or all modifications or changes at the times and intervals required under 29 U.S.C. § 1024(b)(1) and/or 29 C.F.R. §§ 2520.104b-1, 2520.104b-2, 2520.104b-3, 2520.104b-4, or at any other time before, during, or after their employment, thus preventing Plaintiffs and other participants from learning of the existence and terms of their rights

under the Plan;

(b)     By discharging their duties in their own interests;

(c)     By failing to reasonably explain to Plan participants and beneficiaries the material terms and conditions of the relevant Plan documents and provide them with adequate notice of what they needed to do for eligibility and entitlement to benefits;

(d)     By providing incorrect information to Plan participants like Plaintiffs upon their inquiries into Plan benefits;

(e)     By failing to adequately select, train, and monitor their personnel so that misinformation about the Plan, terms of the Plan, and procedures necessary to effect claims for benefits under the Plan did not occur;

(f)     By intentionally withholding or concealing Plan information from Plaintiffs and similarly situated Plan participants;

(g)     By diverting Plan assets for their own self-interest;

(h)     By not following plain and unambiguous Plan terms;

(i)     By improperly trying to amend the Plan and to retroactively reduce owing Plan benefits; and

(j)     By attempting to obstruct Plaintiffs' claims through deceptive and misleading corporate reorganization;

54.

Each of the Defendants knew that the other Defendants were not acting in the best interests of the Plan or the participants and beneficiaries in the Plan.

55.

Through their breaches of fiduciary duties described above, Defendants wrongfully retained millions of dollars belonging to the Plan, Plaintiffs, and others similarly situated.

56.

The Plan, Plaintiffs, and others similarly situated were injured as a result of Defendants' breaches of their fiduciary duties.

57.

The Plan lost significant value as a result of the breaches, and surplus in the Plan was lost.

58.

During their employment and for many years thereafter, Plaintiffs and others similarly situated were not aware of their rights under the Plan and the terms and limitations governing them, as they never at any time received any documents from Southern Pan Services Company, its successor, or the Plan Administrators describing those rights, and they were never orally informed of them. Plaintiffs

and others similarly situated did not become aware of their rights under the Plan until years after their retirement.

59.

Defendants knew the above breaches occurred and continued to occur but failed to make reasonable efforts to remedy the breaches, for example, in not providing Plan documents to Plaintiffs and other participants and in not correcting misrepresentations made to Plan participants.

60.

At all material times, Defendants knew or should have known their continued silence could harm participants, including Plaintiffs and others similarly situated, in the future by depriving them of their rights under the Plan.

61.

Each Defendant, thus, is liable for the others' breaches of fiduciary duty pursuant to 29 U.S.C. § 1105(a)(3).

62.

Defendants are jointly and severally liable to make good and to pay to the Plan, Plaintiffs, and similarly situated Plan participants any losses sustained as a result of their above breaches of fiduciary duties.

63.

Pursuant to the provisions of ERISA, Defendants are liable and should pay the attorney fees and costs incurred by Plaintiffs in this action.

64.

Pursuant 29 U.S.C. § 1132(a)(3), the Court should also award appropriate equitable relief, including but not limited to restitution.

65.

The Court should award Plaintiffs and similarly situated Plan participants:

(a)     the amount of benefits to which they are due, as detailed herein, along with pre- and post-judgment interest;

(b)     $110.00 for each day the above-referenced Plan documents were not produced timely;

(c)     reasonable costs and expenses of this action, including reasonable attorney fees pursuant to 29 U.S.C. § 1132(g);

(d)     an equitable surcharge for unjust enrichment to recover the benefits lost or withheld and to make the Plan, Plaintiffs, and Class whole;

(e)     disgorgement of all profits improperly retained by Defendants;

(f)     reformation of the Plan to the extent needed to equitably address and pay Plaintiffs and similarly situated participants' claims for the

entirety of the benefits that to which they are entitled; and

(g)     equitable estoppel preventing Defendants from relying on the

improper Plan amendments that purport to reduce accrued benefits,

misinformation, and the failure to give correct and accurate

information to Plaintiffs and similarly situated Plan participants; and

## VII.   <u>CLASS ACTION ALLEGATIONS</u>

66.

Plaintiffs, as did other similarly situated Plan participants, participated in the

subject ESOP Plan.

67.

Plaintiffs, like other similarly situated Plan participants, failed to receive

payment as required by Plan documents and federal law.

68.

Plaintiffs, like other similarly situated Plan participants, were not kept

informed, as required by the Plan and federal law and were not properly provided

Plan materials and information, as required by the Plan and federal law.

69.

Plaintiffs and the class are victims of a continuing, wide-spread scheme to deprive Plan participants of the shares in the ESOP Plan to which Plaintiffs and the class are lawfully entitled.

**A.     Class Definition:  The Identity Of The Class Members Can Be Readily Determined.**

70.

In accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and on behalf of a class of all others similarly situated ("Class").

71.

Plaintiffs seek certification of the following Rule 23(b)(3) classes, defined as follows:

> All participants and/or former participants of the Plan who failed to receive payment for their ESOP shares as required by the Plan and federal law; that is, participants and/or former participants with vested benefits more than $1,000 who resigned or were dismissed by Southern Pan and whose benefits were not distributed to the participant "in the time and manner provided in

Section 11.4" and were not rolled over to an "Eligible Retirement Plan" as provided in Section 11.5.

72.

The precise identity of the class members is readily ascertainable using common, manageable proof maintained by Defendants.  Accordingly, there will be no need for a trier of fact to consider evidence on any individual claim.

73.

The Class Period extends from the date this Complaint is filed back through and inclusive of the creation of the Plan.

**B.    The Class Satisfies The Numerosity Requirement.**

74.

The Class is so numerous that joinder of all members is impracticable.  The exact number and identities of class members are unknown at this time and can be ascertained through appropriate discovery.  Plaintiffs' counsel believe the number of class members to be in the hundreds.

**C.    Questions Of Law And Fact Common To The Class Exist.**

75.

Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only

individual members of the class.  Said common questions include, but are not limited to, the following:

(a)     whether the person is an eligible participant or former participant of the Plan;

(b)     whether the class member resigned or was dismissed;

(b)     whether the participant is entitled to receive payment for his or her shares under Section 11.4 of the Plan;

(c)     whether the participant rolled the amount owed into an "Eligible Retirement Plan";

(d)     whether Defendants breached their duties and obligations to Plan participants according to the terms of the Plan and federal law;

(e)     whether participants were damaged by Defendants' breaches, if any;

(g)     and whether Defendants' actions justify an award of attorney fees and litigation expenses.

**D.      Plaintiffs' Claims Are Typical.**

76.

The claims of or defenses against Plaintiffs, as representative-parties, are typical of the claims of or defenses against the class, in that all such claims arise out of the actions of Defendants in failing to pay ESOP benefits pursuant to a

commonly applicable Plan.  Plaintiffs and other class members have suffered a

common injury arising out of Defendants' common course of conduct as alleged

herein.  The provisions of the Plan are identical for each class member.

**E.     Plaintiffs And Their Counsel Will Adequately Represent The Class.**

77.

Plaintiffs, as the representative parties for the class, will fairly and

adequately protect the interests of the members of the class and have no interest

antagonistic to or in conflict with those of class members.

78.

Plaintiffs have retained class counsel competent to prosecute class actions,

including employment class actions, and they intend to prosecute this action

vigorously for the benefit of the class.

**F.     Common Questions Of Law Or Fact Predominate Over Individual
        Issues.**

79.

The questions of law or fact common to the members of the class

predominate over any questions affecting only individual members.  The

overarching issue of whether the class members were properly paid their shares

under a common ESOP Plan is the same for every potential class member.  The

precise identities of the class members and the amount of money owed to any

particular class member is determinable using objective criteria and common,

manageable proof including Plan-related accounting documents maintained by

Defendants.

**G.     A Class Action Is Superior To Other Methods Of Resolution.**

80.

A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, since joinder of all members of the class is

impractical.

81.

The expense and burden of individual litigation would make it difficult and

non-economical for individual members of the class to obtain relief.  In addition,

many, if not the overwhelming majority, of the members of the proposed class may

be unaware that they have been improperly denied ESOP benefits.  The interest of

members of the Class in individually controlling the prosecution or defense of

separate actions is not great given these concerns and the difficulty associated with

bringing individual cases.

82.

It is desirable to concentrate this litigation in one forum as opposed to having individual actions.  The interests of judicial economy favor adjudicating the claims as a class.

83.

There are no known difficulties likely to be encountered in the management of a class action.

WHEREFORE, Plaintiffs pray for the following relief:

(a)    That summons issue and service be perfected upon Defendants requiring them to appear before this Court and answer this Complaint;

(b)    That a class be certified as sought in this Complaint;

(c)    That Plaintiffs and the class have a trial by jury;

(d)    That Plaintiffs and the class recover all elements of compensatory damages and all such damages recoverable under federal and Georgia law against Defendants as specified in this complaint;

(e)    Interest on the amount awarded on all liquidated damages as accrued at the maximum legal rate prior to judgment;

(f)    That Plaintiffs and the class recover attorney fees and litigation expenses;

(g)     All statutory penalties allowed by law; and

(g)     That Plaintiffs and the class have such other and further relief as this

Court deems just and proper.

Respectfully submitted, this 22nd day of January, 2018.

**THE SHARMAN LAW FIRM LLC**

By: /s/ Paul J. Sharman
       Paul J. Sharman
       Georgia Bar No. 227207
       paul@sharman-law.com

11175 Cicero Drive, Suite 100    Counsel for Plaintiffs
Alpharetta, GA 30022
Phone: 678.242.5297
Fax: 678.802.2129

**DAUGHTERY, CRAWFORD & BROWN, LLP**

By: /s/ Jason L. Crawford
       Jason L. Crawford
       Georgia Bar No. 193752
       jason@dcblawyers.com
       Dustin T. Brown
       Georgia Bar No. 086998
       dustin@dcblawyers.com

Post Office Box 1118    Counsel for Plaintiffs
Columbus, GA  31902
Phone: 706.320.9646
Fax: 706.494.0221